Good morning, Your Honors. May it please the Court, Frederick Gold of Shipman & Goodwin for the Appellant, Atlantic-Pacific Capital, or APC. It is my intention to reserve five minutes for rebuttal. Your Honors, this arbitration case presents two issues. First... That is the issue, isn't it, whether it's an arbitration or not? Well, the two issues, Your Honor, are first, who decides arbitrability, and the second, whether it is arbitrable. And if the Court agrees with us on the first issue, that arbitrability as a threshold matter ought be decided by the arbitrator, there is then no reason, respectfully, to reach the second issue. And the District Court should then grant the motion to compel arbitration, which it has heretofore denied. Both issues proceed from analysis of a very broad arbitration clause, of a kind that this Court's precedents have previously found to qualify as broad. And its language provides for arbitration of all disputes, controversies, or claims arising from or relating to the agreement. The standard of review is de novo. As to the first issue, that is, who decides, court or arbitrator, there is significantly no dispute about the existence, the making, or the validity of either the party's written agreement or its arbitration clause. Under that very broad clause, as a matter of law, therefore, there is clear and unmistakable evidence that the parties intended the arbitrator, and not the courts, to decide the threshold issue of arbitrability. Because the District Court's ruling on this point was erroneous as a matter of law, its decision should be reversed and arbitration compelled. I point out that the who decides issue here is governed by New York law, in the first instance, because the contract so provides. And there is compelling New York law that clauses of a materially identical kind to this one ought be interpreted as a matter of law to require the threshold issue to be decided by the arbitrator. And, in addition, the second supporting reason is that this agreement provides for the incorporation of the JAMS streamlined rules. It provides that the arbitration shall be determined pursuant to and in accordance with those rules. And those rules, in turn, provide both that they are incorporated into the party's agreement when they are made to govern, and that the arbitrator shall decide arbitrability. And, I guess, merely citing to the JAMS rules and including an arbitration clause, how does that demonstrate under New York law clear and unmistakable intent? Because I think that's what we're supposed to look at to submit questions of arbitrability to the arbiter. The Shaw case, which is a Second Circuit case interpreting New York law, teaches that it does, Your Honor, especially where, as here, the JAMS rules provide that they are to be lifted whole into the party's agreement. They themselves, the rules themselves, articulate the incorporation proposition. And those rules then go on to say in Rule 8C that the arbitrator shall, it is mandatory, shall decide arbitrability issues. In the Shaw case, the Second Circuit applying New York law did a similar analysis under the rules referenced there, which were the ICC, the International Chamber of Commerce rules. When one combines the incorporation and the governance of the JAMS rules on the one hand with the extremely broad language of our clause on the other, which includes matters relating to the agreement, under New York law, Shaw and the Smith-Barney case from the New York Court of Appeals, it is abundantly clear that that language on its face shall be taken as a matter of law respectfully to require the arbitrator to make the threshold determination. And, of course, Ninth Circuit law is not to the contrary. But if the district judge here had granted the stay and said, this needs to go to JAMS for arbitration, your roles would probably be reversed. You wouldn't have appealed. If the district court had sent us to the arbitrator for the determination of arbitration . . . No, it said, look, the law is a little bit unclear. Either the arbiter or I, the judge, can do it. I'm going to make the decision. This dispute is subject to arbitration. You wouldn't be here as an appellant. I suspect that's correct, Your Honor. Why don't we move to whether it is or is not subject to arbitration. Indeed, Your Honor. Addressing then the second issue, the analysis begins with the premise that the arbitration clause is exceedingly broad as a matter of law because such clauses have been held to be broad. And determination of breadth is the threshold issue because once breadth is determined, there arises a strong presumption in favor of arbitration. And it becomes a wind's burden to overcome that presumption, which they have not done and they cannot do. The proper analysis is to lay the factual allegations of the arbitration demand side by side with the arbitration clause and simply to determine whether the one is encompassed by the scope of the other. The facts alleged in this arbitration demand and each of the theories of liability they support all undeniably touch on the agreement, touch on being an analytic phrase used by several courts, including Ninth Circuit decisions. The dispute here involves whether the agreement was ever properly terminated without prejudging that at all, whether your client performed under the agreement, whether when should be excused from any performance. It was due, duty it had under the agreement. Have I missed anything? Well, I think, I guess the last one is whether the Macau business takes it out of the picture. And the non-circumvention claim, which also bears some relation to the Macau events, but your Honor has captured the gist of it. And in our view, respectfully, your Honor, those issues duly raised by the arbitration demand, undeniably they not only relate to the agreement, they not only touch on the agreement, they arise right from the agreement. We are a contractual, we APC, are a contractual service provider. We claim in some substance we provided a service under the agreement and we seek the fee provided by the agreement. That dispute is all about the agreement. There are multiple defenses that raise interesting interpretive issues. There are merits defenses. It is not appropriate respectfully for them to be reached as part of the arbitrability analysis. And the only proper question on our second issue respectfully is, do we have a dispute that arises from or relates to the agreement? And respectfully, it is ineluctably clear that we do. It is impossible to see this as anything else. This is not a case, for example, in which the arbitration claimant is alleging tort claims, unrelated claims, and even in the similar case, the Ninth Circuit has held that statutory tort claims and common law tort claims, arbitration, Lanham Act, defamation, are encompassed by an arbitration clause similar to this one. This is a case where our claims are all conventional, familiar, garden variety, contract claims. We sue for sums, either damages or fees, under the governing agreement. That's the dispute. It relates to the agreement. It arises from the agreement. Ergo, based on that facial comparison of the arbitration demand and the contract, without more, without reaching the merits, without delving into evidence, as a matter of law, the dispute is arbitrable respectfully. And in the absence of further questions, I'll be delighted to reserve the rest of my time. That's fine. Thank you. Thank you, Your Honors. Good morning, Your Honors. Randy Mastro from Gibson Dun and Crusher for Appellee Wind Resorts. Your Honor, I want to come right to your question, which is whether this is subject to arbitration at all. Your Honors. Yeah, my question when I first picked up the briefs in this case is, what part of any did your client not understand? Well, here, Your Honor, let me explain exactly why, and I think that the district court got it exactly right. Okay. When one reviews the arbitration demand no less than 12 times, and in every one of the claims asserted there, it's about the Wynn IPO and whether the Wynn IPO, the Wynn-McCowl IPO, triggered any obligation of payment of a fee to this particular sophisticated business party, APC. Now, Your Honors, let me explain. What APC claims here is under an agreement that had a single purpose under a special purpose entity. That agreement provided, and you have to read the arbitration clause in conjunction with the very first paragraph. The very first paragraph of that agreement, and that is at ER 27, says that there will be formed a special purpose entity for the purpose of acquiring interest in gaming and hospitality assets, and associated with that, drafted by APC. So, under New York law, Davis alarms, you have to construe the agreement against the drafting party. Now, Your Honors, what about... So, your contention is that the agreement itself dealt only with Nevada properties. Well, absolutely right, Your Honor, because immediately following the entry of the agreement is a marketing plan. That's, Your Honors, in the records, that is in... Let me just accept that for the moment. Their response, I take it, is that we think we've performed under this agreement and we're entitled to a fee. But let me... And win is not excused from paying that fee. Yes, but Your Honor, the agreement applies only to special purpose vehicle to be formed for acquisitions. They then go on to say, we think we're entitled to a fee because a pre-existing entity, going back to 2006, Wynn-Macao IPO, that was involved in selling a minority stake, not acquiring any new hospitality properties in Nevada or anywhere else. The Wynn-Macao IPO involved a sale of an interest in that property. By the very terms of the agreement, Your Honor, on the face of it, this agreement could not possibly apply to entitlement to any fee on the Wynn-Macao IPO, which was a sale, not an acquisition. Number one, it also is not a newly formed entity for that purpose. Wynn-Macao existed for years. And we submit to you that the district court correctly did what Lytton and what this court has said in Central Montana and the Comec case, you have to do as a district court judge. In the first instance, Your Honor, the district court judge has to determine whether the underlying claim and their notice, their demand for arbitration is all about supposedly being entitled to a fee because of the Wynn-Macao IPO. Your Honors, on the face of the party's agreement, the arbitration clause is limited. He leaves the words out of that clause, except as otherwise provided herein. And Your Honors, what's otherwise provided herein? that the underlying agreement is about acquisitions through a to-be-formed entity, not about Wynn-Macao IPO, an existing entity that was selling a minority stake. If APC's arbitration demand had simply been we believe we have performed under the agreement and are entitled to a fee, would that be subject to arbitration? Your Honor, the short answer is... Can you start with a yes or no? The answer is no in this instance for the following reason, Your Honor. Because the court still has an obligation to review what the underlying claims are. APC, in fact, here, Your Honor, invited that by making a voluminous submission. This is what's called a hypothetical question. I understand. Which I get to control. I understand. You understand that. And even under your hypothetical... We believe we're entitled to a fee. You're saying that would not be subject to arbitration. I think Lytton counsels you, Your Honor. And I think the cases in this circuit and the Supreme Court's Lytton decision counsel you that that would be an obvious circumvention or attempt to force a party into arbitration who was not agreeing to arbitrate the underlying dispute. And the Supreme Court has made very clear that arbitration is about consent, not coercion. For this court to allow the arbitration process to be manipulated in that way, if, Your Honor's hypothetical were to be accepted, would be to actually undermine arbitration as a vehicle and would actually be to give carte blanche to another party through pleading in general conclusory terms something that is not the reality of the situation. Here, you don't have to go to that hypothetical, Your Honor, for the precise reason that they said to the court, don't just take our pleading on its face. We're going to show you what the dispute is about. We're going to give you 750 pages of documents. And what did they produce? They produced documents, as did we, that told the court, this is really about a special purpose, a single purpose entity that they were retained to help find investments in Las Vegas for three distressed properties in Las Vegas at the nadir of the fiscal crisis. Not about Macau IPO. Excuse me. Certainly, Your Honor. Describe for the panel a dispute under this agreement that would be subject to arbitration. If, Your Honor, under this dispute, which only provides... Not this dispute. Just tell me a dispute that would be covered by the arbitration clause. And I'm going to go to the agreement. The agreement says that APC could be entitled to a fee if, under the circumstances where it produces investors for the special purpose vehicle, that's Nevada, three Nevada distressed properties for acquisition, if Wynn, in its sole discretion, accepted the investors proffered, created the special purpose vehicle, and actually accepted investments, and deployed, acquired such assets, if they had alleged any of those things, which never occurred here at all, then you would have what the parties intended by the JAMS streamlined rules, which ordinarily apply only to disputes under $250,000. You would have a how-do-you-calculate-the-fee to which they're entitled under those circumstances. But this agreement, most definitely, Your Honor, has nothing to do with the Wynn-Macau IPO, which was a sale, not an acquisition, pre-existing entity, not a newly formed entity, no acquisitions whatsoever. Weren't there some non-Wynn-Macau IPO claims? Didn't APC make some non-Wynn-Macau IPO claims? Assuming you're correct on the Wynn-Macau IPO, shouldn't we remand to the district court for the remaining claims? Let me say this, Your Honor. The burden, the heavy burden, the onerous burden, was on these folks as the parties seeking arbitration to convince the district court that this fell within the arbitration and that the question of arbitrability was to be decided by an arbitrator. Here, Your Honor, the claims all lead back to Wynn-Macau IPO, and the district court found that, and we submit that it was not clear error to do so. Let me go through them briefly. The first claim is breach of contract. Alternatively, as a second claim, breach of good faith and fair dealing, a contractual claim. Now, there isn't any question that the district court found that all of those underlying allegations ultimately relate to whether they're entitled to a fee under the Wynn-Macau IPO, because there was never any acquisition of a property anywhere, and that's the only circumstance under which they are entitled to a fee in any event. There has to be not only investors. There has to be acceptance by Wynn of the investors. There never was. Then there has to be acquisition of a new property. There's never been an acquisition of a new property under Wynn-Macau IPO or in this vehicle that never got completed to acquire Las Vegas properties. Number two, what are the other two claims they have in their bundle? They have declaratory relief and accounting. When one reviews the claim, the accounting is about what they're entitled to under the Wynn-Macau IPO. So all roads lead to the Wynn IPO, but it's a dead end for APC to try to drive down, and that's what the district court found. The district court found that the arbitration agreement did not clearly apply to the allegations that APC was making, and we submit that that was not clear error on the district court's part. On the plain language of the agreement, this agreement did not apply to the pre-existing Wynn-Macau IPO, which was not an acquisition. It was a sale of an interest. And the intent of the parties that the court scrupulously analyzed based on the submissions that APC made and said, Review all this documentation. Review the marketing materials that said flat out this was about three Las Vegas properties and making a new acquisition. Read flat out that the head of APC wrote after the Wynn-Macau IPO an email saying, Congratulations, it's a measure of respect for you in the community. Recognizing our deal is separate from the Wynn-Macau IPO. The district court carefully considered all that evidence and concluded, as the district court is supposed to under Lytton, is supposed to under this court's Central Montana and COMEC decisions, it properly analyzed whether the agreement required arbitration. It determined that the agreement did not require arbitration of these claims because they had nothing to do with the Wynn-Macau IPO. Thank you, Your Honors. Thank you. Oh, Your Honors, may I just add one other thing in terms of the record so that the record is clear in this regard? Your Honors, what the parties even intended to submit to arbitration, while the language, as Your Honor characterized it, applies to claims arising out of or related to the agreement, the parties only purported to incorporate, subject to limitation, except as otherwise provided herein, the JAMS streamlined rules. That's for disputes typically under $250,000. That's one arbitrator, no appellate rights. Yet when the parties incorporated the JAMS standard language on an arbitration clause, they expressly excluded, Your Honors, both that determination of arbitrability would be made by the arbitrator and that claims for breach or termination would be determined in the arbitration. They took that language out of the standard JAMS arbitration language, and we believe that that is very significant, too, in showing that the parties, by picking a method that would be for more modest disputes, not a $35 million dispute, and by expressly omitting that language, APC having been the drafter on determination of arbitrability and breach and termination claims, that in construing that language, it should be construed against APC, and it should be clear that it was not the intent of the parties to submit either arbitrability to the arbitrator or more expansive breach or termination claims other than those that related to determination of a fee, which in this case, they're not entitled to any determination of a fee. In terms of the IPO. Earlier in your argument, you suggested that the arbitration clause had a limitation, except as otherwise provided. Except as otherwise provided here, and that's the very first phrase on the arbitration clause, Your Honor, and I refer you specifically in the arbitration clause to ER 32. The exact language is except as otherwise provided. I'm looking at the clause. This is paragraph G. I believe that's correct, Your Honor. And it begins, any dispute, controversy, or claim? Yes, Your Honor. Except as otherwise provided herein, the JAMS streamlined rules would apply. Third line, second or third line down, Your Honor. But it doesn't say except as otherwise provided any dispute. The except as otherwise provided relates to JAMS streamlined rules, right? The except as otherwise provided herein relates to the JAMS streamlined rules, but, Your Honor, the dispute has to arise from or be related to this agreement. This agreement being only for formation of a new special purpose entity to acquire, not a sale. I think we have your argument on that. Okay. Thank you, Your Honor. You bet. Thank you.  No. Okay. Thank you, Your Honor. May it please the Court. Thank you, Your Honors. What distinguished opposing counsel has just established is that we most assuredly have a dispute. And it arises from and it relates to the agreement. And this issue about the Macau transaction and its IPO is one small portion of that dispute. Inviting the panel's attention to ER 19, which is a page from the arbitration demand, which alleges, paragraph 29 of the demand, by virtue of the foregoing, when breached the agreement in one or more of the following ways among others. And there follows a list. And that list adds up to the four theories of liability that we briefed before this court. Namely, we performed by raising the requisite sums and weren't paid, theory one. Wrongful termination, theory two. There's no dispute that there was a termination notice. We claim it did not provide the requisite time period. And we claim they weren't entitled to terminate because, we allege, in the four corners of the arbitration demand, that they rely on the theory that we stopped pursuing the fundraise under circumstances where they told us to stop pursuing the fundraise. Do you concede that if this matter did go to arbitration, that based on available evidence, the arbiter could conclude that Wynn is excused from performance, has not breached, that the contract was limited to the Las Vegas properties, and Wynn Macau has nothing to do with the agreement? Because, Your Honor's propositions all go to the merits, the answer must be absolutely yes. That's exactly the job of the arbitrator. He or she could also find all those issues in our favor. Both parties are entitled to their proverbial day in court, I should say day in the arbitration room, to try those issues. Now, Your Honor, one of our theories of liability, duly alleged in the demand, the other, of course, is the non-circumvention theory. One of them is that we are entitled to a commission for the Macau IPO monies, and those allegations are at ER 16 and 17, and they're really quite clear. We claim that the defined term investment vehicle in the first paragraph of the agreement, to which my distinguished opposing counsel made reference, ought be interpreted under the language of the instrument read together and the facts and circumstances to include the issuer of the IPO in Macau, China. We say it's included. That's a definitional, pardon me, and a factual dispute arising from and relating to the agreement. It's just one of our theories. It doesn't control the case. Our different theories of liability could rise or fall individually. They're not joined at the hip to each other. It is respectfully a rhetorical device, but it is not correct to say that all our theories depend on the analysis of the Macau, China events. They do not. That's one theory. But all the theories do constitute a dispute arising from and relating to the agreement. And my concluding point is that it really is of some importance that below, this is exactly the argument we made. We argued as to the arbitrability point, not the who decides point, that the language of the arbitration demand ought be laid side by side with the language of the arbitration clause and the determination whether the one comes within the other properly made as a matter of law. And that's set forth in our brief in support of our original motion papers below. There's a section of that brief that is titled, This dispute squarely falls within the agreement's broad arbitration clause. I cite to FER18, and the page is following. It goes from FER18 through FER20. And the sum and substance of that argument is exactly the one we present and that we respectfully urge here today, which is that the analysis of the demand next to the agreement requires the result as a matter of law. In the absence of further questions, Your Honors, thank you very much. Thank you. The case is submitted. Thank you both very much. Excellent arguments by both. Very nice. Thank you.
judges: Fletcher, Hawkins, Murguia